JOSEPH RESIGNO, as Administrator of the Estate of ANTHONY RESIGNO, Appellant, *v.* F. JARKA Co., INC., Respondent, Impleaded with Another.

Ships and shipping — maritime law — stevedores — negligence — provision of Merchant Marine Act that seaman may maintain action at law for injury in course of his employment limited to seamen upon domestic vessel — stevedores on same footing as members of crew — action may not be maintained under Merchant Marine Act for death of stevedore njured on foreign vessel in waters of New Jersey — action maintainable under statute of New Jersey giving cause of action to his representatives — remedy not supplanted by adoption in that State of Workmen's Compensation Act.

1. The provision of section 33 of the Merchant Marine Act of 1920 (41 Stat. ch. 250) that '' any seaman who shall suffer personal injury in the course of his employment, may, at his election, maintain an action for damages at law  *  *  *,'' is to be limited to seamen at work upon domestic vessels. They are without the purview of the act when working upon foreign vessels. Nor is there a distinction between the remedy available to seamen and that available to stevedores. The test does not vary with the nature of the service. For the purpose of applying the statutory remedy a stevedore is on the same footing as a member of the crew. (*International Stevedoring Co. v. Haverty,* 272 U. S. 50, explained.)

2. An action, therefore, to recover for the death of a stevedore from injuries suffered on a foreign steamship, in navigable waters, at Hoboken, New Jersey, may not be maintained in this State under section 33 of the Merchant Marine Act, but, where a statute of New Jersey gives a cause of action for damages to appointed representatives,

15

for negligence resulting in death, the action may be maintained under that statute and a motion to dismiss the complaint on the ground that the remedy has been supplanted by the adoption in that State of a Workmen's Compensation Act is improperly granted. There was no power in the Legislature of New Jersey to substitute a system of workmen's compensation for the existing right of action for the use of the survivors. Since the wrong was done upon the waters, the circumstance is unimportant that the death which followed was upon the land.

*Resigno* v. *Jarka Co., Inc.*, 221 App. Div. 214, reversed.

(Argued November 29, 1927; decided May 29, 1928.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 9, 1927, which affirmed a judgment in favor of defendant-respondent entered upon an order of Special Term granting a motion of defendant-respondent for dismissal of the complaint as to it.

*Harold R. Medina, Edward Gluck* and *Joseph Levy* for appellant. Section 33 of the Jones Act applies to the case of a longshoreman fatally injured on a foreign ship in United States territorial waters. (*International Stevedoring Co.* v. *Haverty*, 272 U. S. 50; *Payne* v. *N. Y., S. & W. R. R. Co.*, 201 N. Y. 436; *Patrone* v. *Howlett*, 237 N. Y. 394; *Panama R. R. Co.* v. *Johnson*, 264 U. S. 375; *Engel* v. *Davenport*, 271 U. S. 33; *Hammond Lumber Co.* v. *Sandin*, 17 Fed. Rep. [2d] 760; *Luckenbach S. S. Co.* v. *Campbell*, 8 Fed. Rep. [2d] 223; 5 Fed. Rep. [2d] 674; *Blosky* v. *Overseas Shipping Co., Inc.*, 219 App. Div. 438; *Lloyd* v. *Hogan & Sons*, 128 Misc. Rep. 665; *Kuhlman* v. *Fletcher Co.*, 20 Fed. Rep. [2d] 465; *Ingersoll-Rand Co.* v. *U. S. Shipping Board, etc.*, 195 App. Div. 838.) The incident that the death took place on land did not prevent the case from being one within the admiralty jurisdiction, where death statutes govern. (*Matter of Clyde S. S. Co.*, 16 Fed. Rep. [2d] 930; *Campbell* v. *Luckenbach S. S. Co.*, 5 Fed. Rep. [2d] 674; *Luckenbach S. S. Co.* v. *Campbell*, 8 Fed. Rep. [2d] 223; *Kursa* v. *Overseas Shipping Co.*, 217 App.

Div. 775; 220 App. Div. 729; *United States Shipping Board Emergency Fleet Corp.* v. *Greenwald,* 16 Fed. Rep. [2d] 948; *Ryley* v. *Phila. & Reading R. R. Co.,* 173 Fed. Rep. 839; *The Anglo-Patagonian,* 235 Fed. Rep. 92; *The Chiswick,* 231 Fed. Rep. 452; *Hamburg-Amerikanische Packetfahrt Aktien Gesellschaft* v. *Gye,* 207 Fed. Rep. 247; *The Sammanger,* 298 Fed. Rep. 620; *Van Doren* v. *Penn. R. R. Co.,* 93 Fed. Rep. 260; *Needhams* v. *Grand Trunk R. R. Co.,* 38 Vt. 294; *Louisville & Nashville R. R. Co.* v. *Williams,* 113 Ala. 402.) The New Jersey Workmen's Compensation Law does not govern this case; and if for any reason the Jones Act does not apply, then the New Jersey death statute does. (Fed. Const. art. 3, § 2; art. 1, § 8; *Jensen* v. *Southern Pacific Co.,* 244 U. S. 149; *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149; *Washington* v. *Dawson & Co.,* 264 U. S. 219; *Millers', etc.,* v. *Braud,* 270 U. S. 59; *Kursa* v. *Overseas Shipping Co.,* 217 App. Div. 775; 220 App. Div. 729; *March* v. *Vulcan Iron Works,* 132 Atl. Rep. 89; *Lee* v. *Fletcher Co.,* 4 Fed. Rep. [2d] 3; *Leszczymski* v. *Radel Oyster Co.,* 129 Atl. Rep. 539; *Roswell* v. *Grays Harbor Stevedore Co.,* 231 Pac. Rep. 934.)

*Charles B. McLaughlin* for respondent. The Jones Act does not apply at bar. (*Clark* v. *Montezuma Transportation Co.,* 217 App. Div. 172; *Plamals* v. *Pinar del Rio,* 125 Am. Mar. Cas. 1309; *The Navarino,* 7 Fed. Rep. [2d] 743; *The Princess Sophia,* 278 Fed. Rep. 180; *Panama R. R. Co.* v. *Johnson,* 264 U. S. 375; *Thompson Towing etc., Co.* v. *McGregor,* 207 Fed. Rep. 209; *Rainey* v. *N. Y., etc., Co.,* 216 Fed. Rep. 449; *Transportation Co.* v. *Turner,* 269 Fed. Rep. 334; *Wenzler* v. *Robbin Line S. S. Co.,* 277 Fed. Rep. 812; *Bennett* v. *Connolly,* 122 Misc. Rep. 149; 208 App. Div. 852; *Patterson* v. *Endora,* 190 U. S. 169.) The cause of action here arose on the land, territory of New Jersey. The Compensation Law of that State is applicable, and there is no cause of action in

admiralty, and, therefore, none at common law. (*Bockhop v. Phœnix Transit Co.*, 97 N. J. L. 514; *Grant, Smith-Porter Ship Co.* v. *Rohde*, 257 U. S. 469; *Holland* v. *Atlantic Stevedoring Co.*, 210 App. Div. 129; *McKeering* v. *Pennsylvania R. Co.*, 65 N. J. L. 57; *Cooper* v. *Shore Electric Co.*, 63 N. J. L. 558; *Consolidated Traction Co.* v. *Hone,* 60 N. J. L. 444; *Grosso* v. *Delaware, L. & W. R. R. Co.,* 50 N. J. L. 317; *Matter of Meekin* v. *Brooklyn Hts. R. R. Co.*, 164 N. Y. 145; *Matter of Brennan*, 160 App. Div. 401; *Gmachle* v. *Rosenberg*, 83 App. Div. 339.) The elective feature in a compensation law provides an exclusive remedy, even in cases exclusively within the admiralty jurisdiction, where the cause of action or the work out of which it arose is of a purely local nature, and does not interfere with the general uniformity of the maritime law. (*Atlantic Transport Co.* v. *Imbrovek*, 234 U. S. 52; *Egan* v. *Morse Dry Dock*, 214 App. Div. 226; 212 N. Y. 556; *State Industrial Comm.* v. *Nordenholt,* 257 U. S. 567; *Grant, Smith-Porter Ship Co.* v. *Rhode*, 257 U. S. 469; *Millers' Underwriters* v. *Braud*, 270 U. S. 59; *Lahti* v. *Terry & Tench*, 240 N. Y. 292; *Metcalfe* v. *The Alaska*, 130 U. S. 201.)

CARDOZO, Ch. J. Plaintiff, an administrator, brings this action against F. Jarka Company, Inc., a corporation carrying on the business of master stevedores, to recover damages for the death of Anthony Resigno, his son. Anthony Resigno, a stevedore employed by the defendant, was working, when his injuries were suffered, on the steamship *Hannover* in navigable waters at Hoboken, New Jersey. The steamship *Hannover* is owned by the North German Lloyd, and flies the flag of Germany. Plaintiff alleges that the Jarka Company, the employer, was negligent in omitting to provide his son with a safe place of work and with competent fellow-servants as well as in other particulars. The employer moves to dismiss the complaint under Civil Practice Rule 107, subdivision

2, upon the ground that the Workmen's Compensation Act of New Jersey supplies an exclusive remedy. The plaintiff founds his right of action, first, upon the act of Congress, commonly known as the Jones Act (Act of June 5, 1920, 41 Stat., c. 250, pp. 988, 1007, § 33), and if that be deemed inapplicable, upon a statute of New Jersey, adopted in 1848, awarding the remedy of damages where negligence results in death.

(1) " Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located." (3 Mason's U. S. Code, p. 3273, § 688.)

The foregoing section (33) is part of a statute entitled " An Act to provide for the promotion and maintenance of the American Merchant Marine, to repeal certain emergency legislation, and provide for the disposition, regulation, and use of property acquired thereunder, and for other purposes." Another section (39) is to the effect that the act " may be cited as the Merchant Marine Act, 1920."

Section 33, above quoted, is an amendment of section 20 of an act of March 4, 1915 (38 Stat., c. 153, p. 1164; *Panama R. R. Co.* v. *Johnson,* 264 U. S. 375, 389). The act last mentioned is entitled " An act to promote the welfare of American seamen in the merchant marine of

the United States; to abolish arrest and imprisonment as a penalty for desertion and to secure the abrogation of treaty provisions in relation thereto; and to promote safety at sea." It amends divers provisions of the United States Revised Statutes, some of which are again amended by the act of 1920, and also divers provisions of the act of December 21, 1898, entitled " An act to amend the laws relating to American Seamen, for the protection of such seamen, and to promote commerce." It includes a new section, numbered 20 (the parent of the present § 33) which provides " that in any suit to recover damages for any injury sustained on board vessel or in its service, seamen having command shall not be held to be fellow-servants with those under their authority."

We hold that section 33 of the Merchant Marine Act of 1920, like its parent, section 20 of the act of 1915, is to be limited to seamen at work upon domestic vessels. We do not doubt the power of Congress to give a broader remedy. Irrespective of the nationality of the vessel, the remedy may be extended to any one who is injured within the territory of our waters. We are unable to convince ourselves that the power has been exercised. The section now before us is to be read in the setting of other acts and sections. So read, it is not susceptible of extension to any vessels but our own. As to these it applies both at home and on the seas. At home and on the seas they are subject to the power of our government. No such range of power exists in respect of foreign vessels. Power as to these is territorial and local. Congress did not intend to give a remedy for injuries suffered on the high seas aboard a vessel of another flag (*Jackson* v. *S. S. Archemedes*, 275 U. S. 463; *American Banana Co.* v. *United Fruit Co.*, 213 U. S. 347, 357). We see no token of an intention to change the class of vessels with changes of locality. The act, when read in its setting, is true to its title, wherein its primary purpose is defined as the promotion and maintenance of the

American Merchant Marine (cf. *Patterson* v. *Bark Eudora,* 190 U. S. 169, 172). It is not to be extended by words of general application to shipping not our own (cf. *The Pinar Del Rio,* 16 Fed. Rep. [2d] 984; affd. by the U. S. S. C. *sub nom. Plamals* v. *S. S. Pinar Del Rio,* 277 U. S. 151, without passing on this question; *The Falco,* 20 Fed. Rep. [2d] 362, 364).

A reading of related sections reinforces this conclusion. When foreign vessels are brought within the range of their provisions, the extension is express. There is no resort to doubtful inference. This is true of the Revised Statutes (see, *e. g.,* §§ 4510, 4530, 4607, 4612; *The Elswick Tower,* 241 Fed. Rep. 706). It is true of the act of 1915 (see, *e. g.,* §§ 14, 16). It is true of the act of 1920 (see, *e. g.,* § 30, subsection P; §§ 31, 32, 34). Section 31 makes provision for the payment of part of the wages earned by seamen on board a vessel of the United States at ports where the vessel arrives. There is express statement that " this section shall apply to seamen on foreign vessels while in harbors of the United States, and the courts of the United States shall be open to such seamen for its enforcement." The debates in the *Congressional Record* quoted in the briefs of counsel have relation to this section. They do not touch the case at hand. Section 32 makes it unlawful to pay wages in advance. Again there is provision that the section shall apply to foreign vessels in our waters (*Jackson* v. *S. S. Archimedes, supra*). Next in order is section 33, the one before us for construction; it significantly omits an equivalent extension. " A few words would have stated that intention, not leaving such an important regulation to be gathered from implication " (*Jackson* v. *S. S. Archimedes, supra,* quoting *Sandberg* v. *McDonald,* 248 U. S. 185). Congress had no difficulty in making its meaning plain when extension was desired. Its silence is the more telling when contrasted with its utterance.

Another signpost of intention is yet to be considered.

As if to clinch the meaning, the chapter of the United States Code embodying the statutes in respect of merchant seamen ends with a section which has the label " definitions." " In the construction of this chapter, every person having the command of any vessel belonging to any citizen of the United States shall be deemed to be the ' master ' thereof; and every person (apprentices excepted) who shall be employed or engaged to serve in any capacity on board the same shall be deemed and taken to be a ' seaman ' " (U. S. Code, § 713, c. 18, title 46; formerly U. S. R. S. § 4612). We cannot read this provision except as a statement that the intention of the Congress is to deal with domestic vessels and with those who work aboard them (*The Elswick Tower, supra,* and cases there cited). We do not ignore the plaintiff's argument that section 713 of the United States Code, being substantially a re-enactment of United States Revised Statutes, section 4612, is to be limited to those sections of the chapter which were contained in the Revised Statutes before they were gathered into the Code (cf. Mason's U. S. Code, vol. 1, p. 1). Of these, the present section (§ 33 of the act of 1920, now § 688 of the Code) is not one. Even if this be so, the definition has significance. The act of 1920 did amend many provisions of the Revised Statutes, as also did its parent, the act of 1915. The provisions so amended are cognate in spirit and effect to the section now before us. We impute to Congress a willingness to mask its true intentions if we say that the acts of 1915 and 1920 were framed throughout their main provisions in subjection to the statutory definitions of " master " and " seaman," but that a single section was expected without hint of such a purpose to bear a broader meaning. The conclusion is unreasonable that the lawmakers, designing an extension, would have left us thus to struggle with silence and obscurity. A new basis of liability, a new principle of jurisdiction, will not be held to have been interjected without warning or by

uncertain implication. If considerations of convenience or policy can be marshaled in aid of a contrary conclusion, there are none of them so clear and unequivocal as to have controlling value. The development of our merchant marine requires, it is said, that foreign and domestic owners compete on a basis of equality. Equality is impracticable in respect of this provision, however we construe it, for jurisdiction is lacking to define the law of remedies for foreign vessels on the seas. In the long run, the development of our merchant marine may be fostered rather than impeded by holding out to seamen employed upon our ships the inducement of a protection withheld by our competitors. The appraisal of such tendencies is matter for the lawmakers. " That which in its immediacy is a discouragement may be part of an encouragement when seen in its organic connection with the whole " (HOLMES, J., in *Compania General de Tabacos de Filipinas* v. *Collector of Internal Revenue*, 275 U. S. 87, 100). We see no reason for a departure from the definitions of a glossary embodied in related statutes and framed for the very purpose of helping to stabilize construction.

The court is unanimous in its holding that seamen in the strict or proper sense are without the purview of the act when working upon foreign vessels. Whatever division there is among us has its origin in a supposed distinction between the remedy available to such seamen and that available to stevedores. The suggestion is that in cases of the latter order, the nationality of the vessel is to be rejected as a test. The judgment of the court is that the test does not vary with the nature of the service. Under the ruling of the Supreme Court (*International Stevedoring Co.* v. *Haverty*, 272 U. S. 50), a stevedore is in as good a position as if he were a seaman proper. We are unable to satisfy ourselves that under that decision, or by force of any consequences legitimately flowing from it, his position is even better. The fact is recalled to

us in *Atlantic Transport Co.* v. *Imbrovek* (234 U. S. 52, 62), that in bygone days the work of loading and unloading was done by members of the crew. We think the effect of *International Stevedoring Co.* v. *Haverty* is merely to put a stevedore on the same footing as the crew for the purpose of applying the statutory remedy. True, indeed, it is that the remedies available to a stevedore may thus vary from day to day, and even from hour to hour, with the location of his labor. Distinctions of that order are not unknown to the law. They have been made familiar by rulings under the Workmen's Compensation Acts by which a longshoreman is given a remedy if working on a boat and denied the same remedy if working on a dock (*State Industrial Commission* v. *Nordenholt Corp.*, 259 U. S. 263). So under the Employers' Liability Act of Congress. The servant gains a remedy or loses one according to the particular service he is rendering at the very moment of the injury (*Chicago, B. & Q. R. R. Co.* v. *Harrington*, 241 U. S. 177). The incongruity is no greater here. Congress did not mean that if a stevedore and a member of a crew were injured on the same vessel as a result of the same casualty, the stevedore should have a remedy and the seaman none. The act was intended to apply to both or neither.

(2) The Federal act failing, there remains the statute of New Jersey which gives a cause of action for damages to appointed representatives where negligence results in death.

The Appellate Division held that the remedy under that act had been supplanted by the adoption in New Jersey of a Workmen's Compensation Act, awarding the usual system of insurance to workmen subject to its provisions. We think the holding is erroneous. Resigno was injured while engaged in maritime work upon navigable waters. There was no power in the Legislature of New Jersey to substitute a system of workmen's compensation for the right of action for damages that was

his under maritime law. There was a like defect of power to substitute such a system for the then existing right of action for the use of his survivors. The point was expressly ruled in *Warren* v. *Morse Dry Dock & Repair Co.* (235 N. Y. 445; 262 U. S. 756); cf. *Western Fuel Co.* v. *Garcia* (257 U. S. 233, 240); *Southern Pacific Co.* v. *Jensen* (244 U. S. 205); *Knickerbocker Ice Co.* v. *Stewart* (253 U. S. 149); *Washington* v. *Dawson & Co.* (264 U. S. 219). A different question would be here if the Legislature had attempted to repeal the death statute altogether. What it attempted was " not to abolish every remedy, but to substitute one remedy for another " (*Warren* v. *Morse Dry Dock & Repair Co., supra*). " To the extent that the substitution of a new remedy is ineffective, the old one survives."

Since the wrong was done upon the waters, the circumstance is unimportant that the death which followed was upon the land ( *Kursa* v. *Overseas Shipping Co., Inc.*, 217 App. Div. 775; *U. S. Shipping Bd. Corp.* v. *Greenwald*, 16 Fed. Rep. [2nd] 948.)

The judgment of the Appellate Division and that of the Special Term should be reversed, and the motion denied, with costs in all courts.

CRANE, J. (concurring in result). A motion was made by the defendant, F. Jarka Co., Inc., under rule 107, subdivision 2, of the Rules of Practice, for judgment on the pleading dismissing the complaint upon the ground that the court did not have jurisdiction of the subject of the action. The motion was granted and the judgment of dismissal has been affirmed by the Appellate Division, one of the justices dissenting.

The complaint alleges that the defendant, F. Jarka Co., Inc., is and was a foreign corporation duly organized and existing under the laws of the State of New Jersey, maintaining an office for the regular transaction of business as stevedore in the borough of Manhattan, city and

State of New York. Further allegations set forth that
F. Jarka Co., Inc., under contract and agreement with
the defendant, the North German Lloyd, was engaged in
loading and discharging a cargo upon and from the
steamship *Hannover*, lying afloat in navigable waters at
a pier at the foot of Sixth street, city of Hoboken, State
of New Jersey. The plaintiff's intestate, Anthony
Resigno, was in the employ of F. Jarka Co., Inc., as a
longshoreman loading and unloading the ship. The
complaint then goes on to allege negligence upon the
part of the employer toward this employee, which resulted
in his death. It is said that the master failed to provide
him with a safe place to work, to furnish him competent
fellow-servants; failed to warn him of latent and unknown
dangers, or to properly instruct him in the performance
of his duties — a common-law cause of action by a servant
against his master. The facts of the accident are alleged,
followed by a copy of the law of New Jersey, approved
March 3, 1848, entitled: "An Act to provide for the
recovery of damages where the death of a person is
caused by a wrongful act, neglect or default," the damages
being recoverable by the representative of the deceased
for the benefit of the widow and next of kin.

The courts of this State had jurisdiction of this cause
of action, irrespective of Federal statutes, and the com-
plaint should not have been dismissed.

The Workmen's Compensation Law of New Jersey did
not apply to the case, as the cause of action arose upon
the navigable waters of the United States. (*Danielsen* v.
*Morse Dry Dock & Repair Co.*, 235 N. Y. 439; 262 U. S.
756; *Washington* v. *Dawson & Co.*, 264 U. S. 219.) The
fact that Anthony Resigno died on land does not
change the admiralty nature of the tort. (*Kursa* v.
*Overseas Shipping Co., Inc.*, 217 App. Div. 775; *The
Chiswick*, 231 Fed. Rep. 452; *The Anglo-Patagonian*, 235
Fed. Rep. 92; *U. S. Shipping Board Emergency Fleet
Corp.* v. *Greenwald* [1927 C. C. A. 2], 16 Fed. Rep. [2d]

948; *Hamburg-Amerikanische Packetfahrt Aktien Gesell-schaft* v. *Gye,* 207 Fed. Rep. 247, 253 [1913 C. C. A. 5].)

As the Workmen's Compensation Act did not apply, an action could be maintained under the New Jersey Death Statute for common-law negligence causing death where the tort was committed upon navigable waters, and the State courts would have jurisdiction of the cause. (*Warren* v. *Morse Dry Dock & Repair Co.,* 235 N. Y. 445; *Western Fuel Co.* v. *Garcia,* 257 U. S. 233; *Kursa* v. *Overseas Shipping Co., Inc., supra.*)

This complaint, therefore, stated a cause of action for common-law negligence resulting in death for which the New Jersey statute gave a right of action to the representatives for the benefit of the widow and next of kin of the deceased. Such a cause of action could be maintained in the Supreme Court of New York State, as it had jurisdiction of the parties. For this reason, if no other, the judgments below must be reversed, and the motion denied. It will not do, however, to stop here, as evidently the plaintiff is unable to prove a cause of action without the assistance of the benefits of the Federal statute. (Act of June 5, 1920; 41 Stat. 1007, chap. 250, sec. 33 which also appears in 3 Mason's United States Code, Ann. of 1926, title 46, chapter 18, section 688, and known as section 33 of the Jones Act.)

As the deceased was working on a German ship, the Appellate Division has held that he is to be deemed a German seaman, and that the act is intended solely for the benefit of American seamen. Although agreeing with that court that the act was intended solely for the benefit of American seamen, I cannot agree that the deceased was in any sense a part of the crew of the *Hannover,* and thus a German seaman.

Section 33 of chapter 250 of the act of June 5, 1920, reads as follows:

" Recovery for injury to or death of seaman.— Any seaman who shall suffer personal injury in the course of

his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located. (Mar. 4, 1915, c. 8153, sec. 20, 38 Stat. 1185; June 5, 1920, c. 250, sec. 33, 41 Stat. 1007.)''

The appellant insists that " every seaman " includes every articled seaman of foreign ships entering our territorial waters; that this act applies to all foreign ships and their crews. He refers to the cases of *Strathearn S. S. Co.* v. *Dillon* (252 U. S. 348) and *Cunard S. S. Co.* v. *Mellon* (262 U. S. 100). As stated in the opinion below, when Congress intended to apply the shipping act to foreign ships, it so stated. This was the basis of the *Dillon* decision. Section 31 of the act of 1920 (Sec. 597 of Mason's Code), " Payment at ports," provided: " That this section shall apply to seamen on foreign vessels while in harbors of the United States, and the courts of the United States shall be open to such seamen for its enforcement." Section 33 makes no such application, and it is natural to assume, therefore, that Congress did not intend to extend its provisions to foreign ships. The object of the act was to provide for the promotion and maintenance of the American Merchant Marine (*Panama R. R. Co.* v. *Johnson*, 264 U. S. 375, p. 389), and I fail to see how the American Merchant Marine would be benefited by applying the act to the

crews of foreign ships. *Stewart* v. *Pacific Steam Navigation Co.* (3 Fed. Rep. [2d] 329) did not directly decide this point. (See *The Navarino*, 7 Fed. Rep. [2d] 743.)

However, even though the Jones Act does not apply to foreign ships and their crews while in territorial waters, it does not follow that longshoremen now considered to be American seamen are not within the purposes of the act, even when working on ships of other nationalities.

Longshoremen have become a class by themselves. They are connected with the local port and do the work of loading and unloading of ships of all nationalities entering that port. They are seldom, if ever, employed by the ship or its owners, but are usually in the employ of a boss stevedore. Such was the case here. Resigno was employed by F. Jarka Co., Inc. This was a corporation doing stevedore business. Resigno had no relations whatever with the ship. It did not employ him and owed him none of the duties arising out of the relationship of master and servant. F. Jarka Co., Inc., was the employer, and owed him the duties imposed by the common law upon masters. For a violation of those duties the ship owners would not be liable. (*The Auchenarden*, 100 Fed. Rep. 895; *West India & P. S. S. Co., Ltd.*, v. *Weibel*, 113 Fed. Rep. 169; 51 C. C. A. 116; *Imbrovek* v. *Hamburg-American Steam Packet Co.*, 190 Fed. Rep. 229; *Dobrin* v. *Mallory S. S. Co.*, 298 Fed. Rep. 349, 352.) The longshoremen thus employed by a stevedore may work on many ships in the course of a day. Would he change his nationality every time to that of the ship on which he happened to be working? Such a statement strikes us at once as unreasonable. In fact he is not a seaman, but merely classed as such to come within the benefits of the Jones Act. Resigno was a resident of New Jersey, worked in New Jersey, and was employed by a domestic corporation doing stevedoring work. He never formed or became part of the crew of any ship, nor was he at the time in question employed

by the ship or its owners. That he was classed as a seaman was due entirely to the intention of Congress as read into this provision of section 33, passed for the purpose of advancing the interests of the merchant marine and to benefit American seamen. His work was so closely connected with shipping and became so necessary to the loading and unloading of vessels that an act passed in the interests of American seamen could hardly have been intended to exclude him. This is the ruling in the *Haverty* case (*International Stevedoring Co.* v. *Haverty*, 272 U. S. 50). When Mr. Justice HOLMES writes: " It is true that for most purposes, as the word is commonly used, stevedores are not ' seamen.' But words are flexible," this is merely the justice's stylistic way of saying that the act of June 5, 1920, was intended to include longshoremen among the class to be benefited by the act. The work of longshoremen was described in *Atlantic Transport Co.* v. *Imbrovek* (234 U. S. 52, 62) as follows: " Formerly the work was done by the ship's crew; but, owing to the exigencies of increasing commerce and the demand for rapidity and special skill, it has became a specialized service devolving *upon a class* ' as clearly identified with maritime affairs as are the mariners.' " This class of specialized workers connected with maritime service is to be covered by the act of 1920 and included within its provisions; not merely those few members of the class who happen for the time being to be working upon American ships. Stevedores and longshoremen would receive very little benefit from this act of Congress were it so limited. Unless the act has this general application, a shift of a gang of longshoremen from a ship on one side of a dock to a ship on the other side, might also shift the law of responsibility. Did Congress intend to make the law of responsibility for this *class* of workmen, or did it intend to leave it to these toilers by hand to select that law? The question must answer itself.

This application of the act of June 5, 1920, has been made in *Zarowitch* v. *F. Jarka Co., Inc.* (21 Fed. Rep. [2d] 187) where Judge SHEPPARD said: "There was no privity between the ship and plaintiff, who was merely a harbor worker, in the service at the time of the Jarka Company, and it would seem a far cry, in view of these facts, to classify the plaintiff as a foreign seaman. The provisions of the Jones (Merchant Marine) Act, extending the rights and remedies applicable to seamen to stevedores, did not invest the latter with the character of seamen, but the statutes by judicial interpretation have been held to include marine workers, and the mere incident of the *locus in quo* of the work performed, though the test of admiralty jurisdiction in tort, does not change the status of such employee from stevedore to seaman." This was followed by Judge MOSCOWITZ in *Mahoney* v. *International Elevating Co., Inc.*, in the District Court for the Eastern District of New York, November, 1927 (not yet reported), and by the Appellate Division, second department, in *Muti* v. *Hoey*, decided Nov. 4, 1927, and reported in 224 N. Y. Supp. 662. In *Clark* v. *Montezuma Transportation Co., Ltd.* (217 App. Div. 172), upon which so much stress is made, the plaintiff was part of the ship's crew and was employed by the ship. He ceased for the time being to be an American seaman. (See, also, the reasoning in *Rainey* v. *New York & P. S. S. Co.*, 216 Fed. Rep. 449.)

In behalf of the respondent, the suggestion has been made that we are forced to narrow the application of this act to longshoremen working on American vessels, by reason of the section of the law relating to merchant seamen containing definitions, schedule and tables found in section 713 of chapter 18, title 46, volume 3, Mason's United States Code, Ann., 1926, p. 3279. It reads as follows: "Definitions, schedule, and tables — In the construction of this chapter, every person having the

16

command of any vessel belonging to any citizen of the United States shall be deemed to be the ' master ' thereof; and every person (apprentices excepted) who shall be employed or engaged to serve in any capacity on board the same shall be deemed and taken to be a ' seaman; ' and the term ' vessel ' shall be understood to comprehend every description of vessel navigating on any sea or channel, lake or river, to which the provisions of this chapter may be applicable, and the term ' owner ' shall be taken and understood to comprehend all the several persons, if more than one, to whom the vessel shall belong."

I do not read this section as containing any such limitation. The purpose was expansion, not limitation. It intended to include in the word " seaman " all those working on board an American ship who might not ordinarily be classed as seamen, such for illustration as an orchestra owner. (*The Sea Lark*, 14 Fed. Rep. [2d] 201, and employments there cited.) It did not, however, necessarily exclude or intend to exclude all others from being American seamen. A sailor salvaging a foreign ship in domestic waters would not cease to be, I take it, when aboard such ship, an American seaman entitled to the benefits of the act. A longshoreman, now classed as an American seaman, does not lose the benefits of this act because he happens to be working for a few hours upon a German instead of an American ship. The act was for the benefit of the seamen, not solely for the benefit of the ship or the ship owners.

This act of June 5, 1920, about which we are writing, section 33, gives to the personal representative of any seaman whose death has been caused by a personal injury, an action for damages at law, with the right of trial by jury. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides, or in which his particular office is located. That such provisions did not exclude the jurisdiction of the

Supreme Court of this State in a proper case, see *Patrone* v. *Howlett* (237 N. Y. 394).

If the above reasons be sound, it follows that the judgments below should be reversed, and the motion for judgment on the pleading be denied, with costs in all courts.

POUND, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur with CARDOZO, Ch. J.; CRANE, J., concurs in result in separate opinion.

Judgments reversed, etc.