## THE SEIRSTAD.

District Court, E. D. New York. June 30, 1928.

No. 8702.

1. **Seamen ⬤⟩29(5)—Statute giving action for damages to seamen is limited to seamen on domestic vessels (Jones Act, § 33 [46 USCA § 688]).**

Jones Act, § 33 (46 USCA § 688), giving seamen right of action at law for injuries sustained on vessels, is limited to seamen at work on domestic vessels.

2. **Seamen ⬤⟩29(5)—Seamen injured on Norwegian vessel held not entitled to compensation under Norwegian law, where Norwegian insurance fund was not made party, and owner's gross negligence was not shown.**

Seaman injured on Norwegian vessel while engaged in removing hatch covers and strongbacks, without gross negligence of owner, *held* not entitled to compensation in suit against shipowner, since Jones Act, § 33 (46 USCA § 688), giving action for damages, is inapplicable, and compensation could not be awarded under Norwegian Compensation Law, §§ 32, 33, because of requirement that compensation be paid by government insurance fund, which was not made party, and requirement that right to indemnity from owner depends on proof of injury with intent or through gross negligence; seaman being entitled only to expenses.

In Admiralty. Libel by Osmund Andersen against the steamship Seirstad. Decree in accordance with opinion.

Silas B. Axtell, of New York City, for libelant.

Haight, Smith, Griffin & Deming, of New York City, for respondent.

CAMPBELL, District Judge. The libelant, a Norwegian citizen, signed Norwegian articles on board the Norwegian steamship Seirstad, at Philadelphia, Pa., about July 1, 1923, for a round trip to Cuba and pay off in Philadelphia. She proceeded to Cuban ports and loaded iron ore for Philadelphia. On conflicting testimony I find as follows:

While proceeding up the Delaware river, the libelant was engaged in removing hatch covers and strongbacks at hatch No. 5, in company with four or five other members of the crew under the orders of the third officer. In performing that duty it was necessary to use a sling and hooks. The sling

and hooks were in proper shape and in every way fitted for the use to which they were being put, and in addition thereto it was also shown that there was an additional set of hooks on board, which could have been used and which admittedly were in every way proper.

Even if the hooks had been in the condition described by libelant, that condition was not in any way responsible for libelant's injuries, as it is clear to me that the hook had not been placed in the hole in the strongback when the libelant carried the second hook with him across the strongback, and due to the first hook, which was hanging loose over the coaming, slipping off the coaming and dropping, the libelant lost his balance and fell.

The libelant's contention that the ship was undermanned finds no support in the evidence. With the facilities furnished the work could have been safely performed, if the libelant had used a heaving line, and had not done what, as a seaman, he must have known, even if he had not been warned, was a dangerous thing to do, cross the strongback with the hook in his hand. The contention of the libelant that he crossed the strongback at the direct order of the third officer is not sustained.

The steamship Seirstad was not unseaworthy, and no recovery can be had, unless section 33 of the Jones Act (46 USCA § 688) applies, because Norway has a Compensation Act which furnished an exclusive remedy, and after the injuries to libelant he was provided with hospital care and maintenance, and on more than one occasion offered by the Norwegian consul general free transportation to Norway to enable him to obtain compensation, which libelant refused.

In January, 1926, libelant commenced the instant suit in personam against the owner of the steamship Seirstad. A motion was made before another judge of this court requesting him to decline to retain jurisdiction of the case, on the ground that it involved a controversy between a foreign seaman and his employer a foreign shipowner, which was granted, but subsequently upon reargument denied solely on the ground that he felt that it would impose undue hardship on the libelant to return to Norway to obtain his compensation award. 12 F.(2d) 133.

I do not interpret such decision as determining that the American, and not the Norwegian, law governed, because, if that had been the holding, the court would not have been vested with discretion to refuse to retain jurisdiction. On the other hand, the

court might well have felt that the libelant was entitled to have an opportunity to show that he was entitled to indemnity under the Norwegian law.

In The Navarino (D. C.) 7 F.(2d) 743, an action in rem, I held that the law of the United States was applicable, the injury having been suffered in an American port; but I also held that, if I was in error in holding that the law of this country applied, then the British law was controlling, and it seemed to me that the libelant was entitled to maintain his suit and recover under that law, the unseaworthiness of the Navarino and her appliances having been shown.

No appeal was taken in that case but this construction of the Jones Act has not received the approval of the Circuit Court of Appeals in this circuit, which in The Pinar del Rio, 16 F.(2d) 984, 1927 A. M. C. 268, while basing its affirmance on the ground that no lien in rem under the Jones Act existed, said: "There remains the question of the applicability of Jones Act, § 33. Whether this section applies at all to foreign vessels within our territorial waters has in our judgment been well discussed in Clark v. Montezuma Transp. Co., 1926 A. M. C. 954, 217 N. Y. App. Div. 172 [216 N. Y. S. 295], which case holds that it did not."

The Supreme Court affirmed Plamals v. The Pinar del Rio, 48 S. Ct. 457, 72 L. Ed. ——, 1928 A. M. C. 932, limiting its finding to the ground that no right in rem was given by the Jones Act, and that action was in rem. The Pinar del Rio, therefore, was not decisive on the question presented in the case at bar, which is brought in personam.

[1] The question here presented has been passed upon in Clark v. Montezuma Transportation Company, supra, and Resigno v. F. Jarka Co., Inc., 248 N. Y. 225, 162 N. E. 13, decided by the Court of Appeals of the state of New York May 29, 1928, both of which are actions in personam, and as Clark v. Montezuma Transportation Company, supra, has been cited with approval by our own Circuit Court of Appeals, and its doctrine affirmed by the state Court of Appeals, I feel constrained to hold that, while the Congress undoubtedly had power to give the remedy of the Jones Act to any seaman who is injured within the territory of our waters, irrespective of the nationality of the vessel on which the injury is received, the provisions of section 33 of the Jones Act are limited to seamen at work upon domestic vessels.

If The Apurimac-Heredia v. Davies (C. C. A.) 12 F.(2d) 500—holds more than that,

since no proper proof had been introduced that the law of Peru differed from the general maritime law, an award based on the latter would not be upset, I must respectfully decline to follow it, as it would appear not to be in harmony with the view of the Circuit Court of Appeals of this circuit.

[2] This court cannot make an award under the Norwegian Compensation law, sections 32 and 33 of which read as follows:

"Sec. 32. Accidents, coming within the scope of this law, impose no obligation upon the owners, master, or other officer of the ship concerned, to pay personally, or out of the ship's estate (ship and freight) any compensation, unless it has been proved by a penal sentence that one or other of such persons has caused the injury with intent, or through gross negligence.

"If this be the case, the person sentenced to punishment shall be held liable for compensation in accordance with the general provisions of the law, the amount of such compensation being determined by a legal award, and paid in a lump sum once and for all. The person injured, or his surviving relatives, shall in any case obtain compensation from the Royal Accidents Insurance Office as stipulated in sections 4, 5, and 6. The injured person's claim to compensation (not including compensation for damage to goods) shall be transferred to the Royal Accidents Insurance Office to the extent necessary to cover the expenses and liabilities it has incurred. If the full amount of compensation cannot be obtained, there shall, nevertheless, be paid to the injured person, or to his surviving relatives, such portion of the amount of compensation as is due to them, before the claim of the Royal Accidents Insurance Office is satisfied.

"The foregoing provisions shall not affect the liability of a shipowner, under the maritime law, to pay wages to members of the crew overtaken by accidents, or to defray the outlay connected with their treatment and maintenance, as well as their funeral expenses.

"Sec. 33. A shipowner, or officer commanding a ship, shall not be responsible for compensation that may have to be paid by his subordinates in the cases mentioned in section 32."

Payment under that law is not made by the shipowner, but by the Government Insurance Fund acting through the Royal Accidents Insurance Office, which is not a party to this action. Under the Norwegian statute there is no right to an indemnity from the owner, unless he personally has been proven

by a penal sentence to have caused the injury with intent, or through gross negligence, neither of which conditions have been shown to exist.

An award for maintenance and cure appears to be allowable under the Norwegian statute, and the libelant would be entitled to such an award under our law. The voyage ended about two hours after libelant was injured, and there was no evidence presented that his wages were not paid. His maintenance in the hospitals up to February 11, 1924, was provided by the Norwegian consul, and his cure was also paid for by the consul.

Immediate free transportation was offered to the libelant personally by the consul general, on March 5, 1924, and refused. The expenses of libelant amounted to approximately $20 per week, and for 24 days, from February 11 to March 5, 1924, to $68.56, for which amount, with costs, libelant is entitled to a decree.

A decree may be entered in accordance herewith.