## URAVIC, ADMINISTRATRIX, *v.* F. JARKA COMPANY, INCORPORATED, ET AL.

No. 32. Argued December 8, 1930.—Decided January 5, 1931.

---

*Mr. Raymond Parmer,* with whom *Mr. Vernon Sims Jones* was on the brief, for petitioner.

236

*Mr. Ernie Adamson* for respondents.

*Mr. George deForest Lord,* by special leave of Court, filed a brief on behalf of The Cunard Steam Ship Company, Limited, as *amicus curiae.*

MR. JUSTICE HOLMES delivered the opinion of the Court.

This is an action that was brought in a court of the State of New York and tried before a jury. At the close of the plaintiff's case the complaint was dismissed upon the merits and the decision was affirmed by the Court of Appeals, 252 N. Y. 530, on the authority of *Resigno v. F. Jarka Co.,* 248 N. Y. 225. A writ of certiorari was granted by this Court, 281 U. S. 708, because there is involved an important question as to the applicability of the Jones Act of 1915, c. 153, as amended by the Act of June 5, 1920, c. 250, § 33, 41 Stat. 988, 1007; U. S. Code, Title 46, § 688.

The action was for causing the death of the plaintiff's intestate, Anton Uravic, an American citizen, employed

in work as a stevedore by the F. Jarka Company, a Delaware corporation. The suit against the other defendant named was discontinued. At the time of receiving the injury that caused his death, July 13, 1926, Uravic was helping to unload a vessel flying the German flag, in the harbor of New York. He was on the vessel at the time and we are to take it that he was hurt by the negligence of a fellow servant. That fact was no defence if the above-mentioned § 33 governed, because it is not one in the case of railway employees; Act of April 22, 1908, c. 149, § 1, 35 Stat. 65; U. S. Code, Tit. 45, § 51; and this § 33, giving an action at common law to the personal representative of any seaman suffering death in the course of his employment, makes applicable all statutes of the United States conferring or regulating such right of action in the case of railway employees. It is decided that stevedores come within the benefits conferred by § 33. *International Stevedoring Co.* v. *Haverty*, 272 U. S. 50. But the question is raised whether the statute applies to a stevedore working on a vessel that we assume to have been German, since she flew the German flag.

The language of the statute is general. The right is given to "any seaman," including, as we have said, stevedores. The jurisdiction and the authority of Congress to deal with the matter are unquestionable and unquestioned. *Cunard Steamship Co.* v. *Mellon*, 262 U. S. 100, 124, *et seq*. The conduct regulated is of universal concern. The rights of a citizen within the territorial limits of the country are more extensively determined by the scope of actions for torts than even by the law of crimes. There is strong reason for giving the same protection to the person of those who work in our harbors when they are working upon a German ship that they would receive when working upon an American ship in the next dock, as is especially obvious in the case of stevedores who may

be employed in unloading vessels of half a dozen different flags in turn.

But it is said that stevedores only get their rights by a somewhat artificial extension of the word " seaman," and it is argued that a seaman upon a German vessel clearly would not be given the rights claimed. It is said that the word is defined by R. S. § 4612, U. S. Code, Tit. 46, § 713. But that section merely provides that for the purposes of the chapter " seaman " shall include persons who otherwise might be deemed not to be seamen. It is directed to extension not to restriction, as remarked by Judge Crane in *Resigno* v. *F. Jarka Co.*, 248 N. Y. 225, 242. Then it is argued that the grant of jurisdiction to the Court of the District in which the defendant employer resides or has his principal office, without granting a proceeding *in rem* in the case of tramp steamers from abroad, shows that seamen on a foreign vessel were not contemplated. But the question is not whether they were thought of for the purpose of inclusion, but whether they were intentionally excluded from a description that on its face includes them. The express mention of them in sections as to the payment of wages does not help the respondent since that is a domestic matter of contract that, unless mentioned, might be left to the parties concerned. See *Jackson* v. *S. S. Archimedes*, 275 U. S. 463, 467.

Perhaps it would be a sufficient answer to the objections that, while the § 33 is construed to give the rights of seamen to stevedores, it does not say or mean that stevedores are to be regarded as seamen on the particular vessel upon which for the moment they happen to be at work. They simply are given the rights of seamen and, as they are American workmen, they have the rights of American seamen as well on German as on American ships.

But we may go further. Here we are dealing with the conduct of persons within the jurisdiction affecting the

240

safety of other persons within it. If the rule is wise there is no reason why it should not be universal. Wise or not, it is law and the question is why general words should not be generally applied. What would be the alternative? Hardly that the German law should be adopted. It always is the law of the United States that governs within the jurisdiction of the United States, even when for some special occasion this country adopts a foreign law as its own, *The Exchange,* 7 Cranch 115, 136. *The Lottawanna,* 21 Wall. 558, 571, 572. *The Western Maid,* 257 U. S. 419, 432. *Cunard S. S. Co.* v. *Mellon,* 262 U. S. 100, 124. There hardly seems to be a reason why it should adopt a different rule for people subject to its authority because they are upon a private vessel registered abroad. They are not within the exception as to public armed vessels of a foreign sovereign, whatever its extent. *The Exchange,* 7 Cranch 115, 143. Crimes committed upon such private vessels may be punished by the territorial jurisdiction. *Wildenhus's Case,* 120 U. S. 1. *Patterson* v. *Bark Eudora,* 190 U. S. 169, 177. We see no reason for limiting the liability for torts committed there, when they go beyond the scope of discipline and private matters that do not interest the territorial power. But in these latter cases the local authority might abstain from interfering simply because it did not care to interfere. It would be extraordinary to apply German law to Americans momentarily on board of a private German ship in New York.

At the argument it was suggested that the case should be governed by the general maritime law. This means, as we have indicated, by the law of the United States, with the provisions of § 33 left out. It is assumed that by the law, so qualified, a master would not be liable to a servant for an injury caused by the negligence of a fellow servant. But that doctrine is of relatively recent appear-

ance in admiralty, following the common law. *The City of Alexandria,* 17 Fed. Rep. 390. And, as we believe, it was introduced into the common law almost within the memory of men still living, upon a principle of policy. Labatt, Master & Servant, §§ 471, *et seq.,* § 484; 2d ed. §§ 1394, 1408. It would be somewhat hard to maintain that principle as still the policy of the law in this case after the doctrine has been abolished for railroad employees and seamen. See *International Stevedoring Co.* v. *Haverty,* 272 U. S. 50, 52.

If it should appear that, by valid contract or special circumstances, seamen on a foreign ship should not be protected by the statute, it will be time enough to consider the exception when it is presented. But the purport of the words is plain and there is no reason to deny stevedores the benefit of them, even if exceptions to the rule for seamen may be found upon peculiar facts.

*Judgment reversed.*