## GERRADIN v. UNITED FRUIT CO.
### No. 290.

Circuit Court of Appeals, Second Circuit.
July 26, 1932.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Morton L. Fearey and G. F. Tinker, both of New York City, of counsel), for appellant.

Benjamin Bernstein, of New York City (Max J. Wolff, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiff, Gerradin, was an American citizen born at Charleston, S. C. He was employed as cook's mate on the steamship Castilla which the defendant, United Fruit Company, a New Jersey corporation, operated under a demise charter. The vessel was owned by the Ellis Steamship Corporation, a New York company, which had chartered her to the defendant. She was registered under the law of Honduras, had never been documented under the laws of any other country and carried the Honduras flag. The plaintiff was hired by the defendant at New York and joined the ship and signed the articles there, which covered a voyage from New York to Honduras and return.

The action was brought under section 33 of the Merchant Marine Act of 1920 (46 USCA § 688), known as the Jones Act, to recover damages due to the alleged negligence of a sailor working on the Castilla, who, while washing the deck of the steamer, splashed soapy water on a stairway that Gerradin was ascending, and thereby caused the latter to slip and fall down the stairway to his injury. The accident occurred while the vessel was on the high seas, three days out from New York and bound for Honduras.

The District Court submitted the case to the jury upon the theory that the Jones Act covered the situation because of the American domicile of the owner of the Castilla. This fact was held to be controlling, and not to be affected by the terms of the act or of the Treaty between the United States and Honduras (45 Stat. 2618). The defendant appealed from the judgment entered upon a verdict for the plaintiff, on the ground that the Jones Act was not applicable to a seaman on a vessel of foreign registry, while she was on the high seas, that the law of Honduras applied, and that under that law the plaintiff could only recover for maintenance and cure. It attempts to sustain its position by the terms of the Treaty between the United States and Honduras, by principles of international law, and because of the objects which Congress sought to attain in the passage of the Jones Act. If defendants' contention be sound, American owners and chartered owners of vessels can escape liability for injuries to American seamen employed on their ships by procuring registry under a foreign flag. We feel little doubt that the broad contention of the defendant that vessels of the American merchant marine are limited to those documented under the laws of the United States is not well founded. Section 33 providing the same recovery for a seaman who suffers personal injuries in the course of his employment as is given to railway employees must be read in connection with section 4612 of the U. S. Revised Statutes, which has been carried into the United States Code as section 713 of title 46 (46 USCA § 713). It reads as follows:

"In the construction of this chapter, every person having the command of any vessel belonging to any citizen of the United States shall be deemed to be the 'master' thereof; and every person (apprentices excepted) who shall be employed or engaged to serve in any capacity on board the same shall be deemed and taken to be a 'seaman'; and the term 'vessel' shall be understood to comprehend every description of vessel navigating on any sea or channel, lake or river, to which the provisions of this chapter may be applicable, and the term 'owner' shall be taken and understood to comprehend all the several persons, if more than one, to whom the vessel shall belong."

■ The foregoing section clearly defines "seaman" as any person who is employed on board "any vessel belonging to any citizen of the United States," and therefore includes the plaintiff, for the latter was employed on a vessel to which one American citizen held the legal title and of which another American citizen (the defendant) was the owner pro hac vice. But it is said that section 713 of the United States Code does not define those who may sue to recover for personal injuries under the Jones Act (now section 688 of the Code [46 USCA § 688]) because section 713 is a mere re-enactment of Rev. St. § 4612 (which was taken with immaterial modifications from section 65 of chapter 322 of the Act of 1872, 17 Stat. 277), and section 4612 defined the word "seaman" only as the term was used in chapter 322 of the Act of 1872 and in title 53 of the Revised Statutes.

It is, of course, true that the United States Code is but a compilation of existing statutes having only prima facie effect, and that section 713 of title 46 can have no greater application than it had under its old designation of R. S. § 4612. But section 65 of Chapter 322 of the Act of 1872, which contained the original statutory definition of the word "seaman," was a section of a comprehensive act creating shipping commissioners, requiring written articles for seamen, regulating payment of their wages and mode of discharge, and containing various provisions for the protection and discipline of sailors. These enactments were carried into the Revised Statutes of 1878 as "Title LIII Merchant Seamen," the final sections of which contained the definitions to be used "In the Construction of this Title."

Title 53 comprehended the then existing statutes relating to seamen.

The American Seamen's Act of 1915, 38 Stat. 1164 (known as the La Follette Act) amended many sections of title 53 in the interest of seamen, for example, section 4516 (46 USCA § 569), relating to desertion; sections 4529 and 4530 (46 USCA §§ 596, 597 and note), relating to payment of seamen's wages; section 4559 (46 USCA § 656), relating to complaints by the officers or a majority of the crew as to the condition of a vessel; section 4596 (46 USCA § 701), relating to punishments of offenses by sailors; and section 4611 (46 USCA § 712), abolishing flogging. It also amended section 2 of the Act to amend the Laws relating to Navigation, approved March 3, 1897 (46 USCA § 80); section 10 of chapter 121 of the Laws of 1884 as amended by section 3 of chapter 421 of the Laws of 1886 (46 USCA § 599 and note); sections 16 and 23 of the Act to amend the Laws relating to American Seamen, approved December 21, 1898 (46 USCA §§ 683, 713). The motive of the La Follette Act was primarily humanitarian, and it was entitled "An Act to promote the welfare of American seamen. * * *" The foregoing amendments which were its most important features amplified existing statutes for the benefit of seamen and in effect carried into title 53 of the Revised Statutes enlarged remedial provisions. Surely, when section 4612 had long defined who were seamen within the meaning of title 53, its definitions still applied to the amended sections, included in the La Follette Act, in the same way they applied to the sections of title 53 before any amendments were adopted. Not only is this so because the amendments were of numerous sections of a single title (53) in which the definitions of section 4612 were controlling, but because any other construction would restrict the remedies given to seamen by an act plainly intended to enlarge their rights.

The proviso of the La Follette Act which concludes the regulations for life saving introduced because of the Titanic disaster was not limited in its application to American owned vessels, but imposed new obligations upon foreign shipowners. This proviso (38 Stat. 1170 [46 USCA § 481]) required "that foreign vessels leaving ports of the United States shall comply with the rules herein prescribed as to life-saving appliances, their equipment, and the manning of same." It is to be noted, however, that the proviso did not narrow the obligations of American shipowners, but extended the new requirements for life saving to foreign vessels clearing from our ports.

Section 20 of the La Follette Act was intended to enlarge the exising rights of sea-

men by providing that in suits to recover damages for injuries "seamen" having command should not be held to be "fellow-servants with those under their authority." In Chelentis v. Luckenbach S. S. Co., 247 U. S. 372, 38 S. Ct. 501, 62 L. Ed. 1171, it was held that the Seamen's Act had imposed no liability upon the shipowner beyond the existing maritime obligation for maintenance and cure, that, if the vessel was seaworthy, it could make no difference whether injuries arose through the acts of a fellow servant, for the liability for maintenance and cure did not depend on proof of negligence, but was absolute.

In view of the sudden growth of shipping after the war, Congress passed the Act of 1920 (41 Stat. 988) to provide for the promotion and maintenance of an American merchant marine. This act contained new provisions for documentation, transfer, and mortgaging of vessels, and, like the Act of 1915, contained amendments of portions of title 53 of the Revised Statutes in aid of seamen. At the very end it amended section 20 of the La Follette Act by section 33 (46 USCA § 688) so as to avoid the Chelentis decision and to give seamen all the remedies for injuries afforded to railroad employees. In other words, section 33 originated as an amendment of section 20 of the La Follette Act which was essentially an addition to title 53 of the Revised Statutes and was defined by section 4612. In view of the origin of section 33 and the background of both the Act of 1920 and the La Follette Act, we can feel no doubt that the Act of 1920 is to be read in connection with section 4612 of the Revised Statutes and that the remedies afforded by section 33 are extended to seamen employed on American owned ships—that is, to the class of seamen defined by section 4612.

In Resigno v. Jarka Co., Inc., 248 N. Y. at page 232, 162 N. E. 13, Cardozo, C. J., held that the remedies were so extended and only defeated Resigno because he was not employed on an American owned vessel. Holmes, J., in Uravic v. Jarka Co., 282 U. S. at page 239, 51 S. Ct. 111, 75 L. Ed. 312, evidently regarded section 33 as not only extending to seamen employed on an American owned vessel, but also to American stevedores (having the rights of seamen) when working on a foreign vessel while in a port of the United States. He enlarged but did not limit the rights of seamen.

But it is said that many of the sections of chapter 18 of the United States Code contain "minute details of internal management with attendant penalties prescribed for non-observance," and that it "would be wrong to subject a ship's master to two sets of different rules propounded by two nations on such subjects." The same thing might have been said about many of the provisions of chapter 322 of the Act of 1872 where the statutory definition of "Seamen" first appeared and of most of title 53 of the Revised Statutes where the definition was continued by section 4612. So far as such an objection may have force, it is enough to say that matters of "internal management" are not involved in an action by a seaman to recover damages for injuries suffered through the negligence of the shipowner. A similar contention was made in Uravic v. Jarka, supra, to defeat the action by an American stevedore for injuries suffered while at work in New York Harbor on a German-owned ship, but Justice Holmes answered it by saying (282 U. S. at page 240, 51 S. Ct. 111, 112, 75 L. Ed. 312): "* * * We see no reason for limiting the liability for torts committed there when they go beyond the scope of discipline and private matters that do not interest the territorial power."

In the same way matters of the internal management of the Castilla, a ship of Honduran registry, might not interest the United States even if they had occurred in New York Harbor, but the right to recover damages from an American shipowner afforded by section 33 of the Jones Act is of vital importance to a large number of seamen signing articles for American owned ships.

There can be no doubt about the power of Congress to impose liability upon its own citizens for acts done on the high seas or at other places outside its territorial jurisdiction. American Banana Co. v. United Fruit Co., 213 U. S. at page 356, 29 S. Ct. 511, 53 L. Ed. 826, 16 Ann. Cas. 1047. Section 33 of the Merchant Marine Act (46 USCA § 688) has done this in the case of American citizens who own ships on which seamen are injured through their negligence, and it seems but a slight disregard of the symbol of foreign registry to apply an ordinary rule of torts to a shipowner who bears such an illusory shield. The question is not one of power, but of the meaning and scope of Rev. St. § 4612.

The Treaty of Honduras with the United States is relied on, but it is no defense to the plaintiff's claim. There is nothing in it to cover this case. It is a complete answer to such a contention that Honduras is not concerned—just the same answer as the one we have quoted above from the language of the court in Uravic v. Jarka, 282 U. S. at page

240, 51 S. Ct. 111, 75 L. Ed. 312. Article 22 of the Treaty (45 Stat. 2634) is relied on, which provides that: "A consular officer shall have exclusive jurisdiction over controversies arising out of the internal order of private vessels of his country, and shall alone exercise jurisdiction in cases, wherever arising, between officers and crews, pertaining to the enforcement of discipline on board, provided the vessel and the persons charged with wrongdoing shall have entered a port within his consular district. * * * "

This article relates only to matters of "internal order" or "discipline" on board a vessel of Honduran registry as to which the treaty might prevail even in an American port, but it does not affect rights of seamen to recover damages for negligence against an American citizen who owns the vessel. While section 33 literally covers even these matters of internal discipline, the subsequent treaty might require our courts to abstain from action as to them where there was the formal barrier of registry between the shipowner and his antagonist. Uravic v. Jarka, 282 U. S. at page 240, 51 S. Ct. 111, 75 L. Ed. 312. It does not affect the present action.

In view of the foregoing, we see no reason to pass on any other questions raised by the appellant.

Judgment affirmed.