BALTIMORE & O. R. CO. v. PARKER et al.

No. 2206.

District Court, D. Maryland.

Oct. 5, 1933.

George W. P. Whip and Allen S. Bowie, both of Baltimore, Md., for complainant.

Cornelius Mundy, Asst. U. S. Atty., of Baltimore, Md., for Deputy Commissioner.

Joseph Loeffler, of Baltimore, Md., for respondents.

WILLIAM C. COLEMAN, District Judge.

This case is before the court on a petition by the employer, the Baltimore & Ohio Railroad Company, to set aside, for lack of jurisdiction, an award of the deputy commissioner of the United States employees' compensation commission for the fourth compensation district, under the Longshoremen's and Harbor Workers' Compensation Act (33 U. S. Code § 901 et seq. [33 USCA § 901 et seq.]), to the person found to have been the widow of George M. DeWald, who was drowned under conditions hereinafter referred to. This court has power under the provisions of the Longshoremen's Act to review compensation awards and to suspend or set them aside in whole or in part "if not in accordance with law." 33 U. S. Code, § 921 (33 USCA § 921). The deputy commissioner acts as a fact-finding body, and it is the duty of the court to determine whether or not, upon the evidence adduced before the deputy commissioner, his award has been in

accordance with law, that is, whether there is any substantial evidence sufficient to justify the finding of the deputy commissioner.

■ In this case there is raised initially the question of jurisdiction, which is the sole question now before this court for review. We must first, therefore, ask and answer these questions: What is the scope of the act? What kind of persons does it embrace, and under what conditions? Judge Soper explained in the case of United States Casualty Company v. Taylor (C. C. A.) 64 F.(2d) 521, page 524, that this act "is applicable only to workmen engaged in maritime employment, and that compensation under the act may lawfully be paid only in those cases in which a state has no authority to act." That is a correct abbreviated interpretation of the jurisdictional provisions of the act (33 U. S. Code, § 903 [33 USCA § 903]), which read as follows: "(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through Workmen's Compensation proceedings may not validly be provided by State law. No compensation shall be payable in respect of the disability or death of—(1) A master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net." Then follow provisions with which we are not concerned and which, therefore, need not be quoted.

The evidence discloses, as found by the deputy commissioner, that although there was no eyewitness, DeWald must have been drowned when he accidentally fell overboard from one of the three barges on which he was assigned to work, while they were lying at a pier in Baltimore Harbor. His body was recovered some days later. The drowning of DeWald thus occurred in navigable waters, and therefore the first question which we have to decide is, Was the work in which he was engaged maritime? That can, of course, only be determined by examining the record and considering the character of his work at the time he was drowned.

The statement of the character of De Wald's work, as contained in the deputy commissioner's findings of fact, is accurate and sufficiently ample, with perhaps one or two additions. The deputy commissioner found that he was employed as a barge man; that his duties consisted of checking and supervising the loading and unloading of cargo from barges to steamships and vice versa; of seeing that the cargo was safely loaded and unloaded; making a record of all damaged freight, signing receipts for cargo, loaded and unloaded; opening and closing hatches on barges; putting in gangway boards; pumping water out of barges; making lines fast and unfast at docks or alongside vessels when the barges were moved about the harbor; that he lived ashore and reported for work each morning at a specified time to see whether he was needed; that he was given work averaging about three days a week. It was also found that the three barges on which he was employed at the time he met his death by drowning had no motive power, equipment, or steering apparatus, being towed or pushed by tugboats; that their radius of operations was confined to Baltimore Harbor; that when the barges were moved about the harbor the deceased always accompanied them on such trips, which averaged one per day, and that he then had duties to perform with respect to loading and unloading; that on such trips the deceased was not responsible for the navigation of the barges and performed no duties in connection with such navigation, except the incidental one of making lines fast and unfast when tying up to docks or alongside vessels. It should be added that the barges were all of about the same model, wooden covered lighters, 180 feet long, 34 feet beam, square ended, flat bottom, with aft deck house.

We must conclude from the aforegoing that what the deceased was doing at the time of the accident was maritime in nature. But such a finding is not alone sufficient to indicate jurisdiction to entertain a suit under the act. As has been pointed out, there are exceptions to the coverage of the act, and the exception with which we must now concern ourselves is the one above quoted, namely, that "no compensation shall be payable in respect of the disability or death of a master or member of a crew of any vessel."

■ Was the deceased a master or member of the crew of these barges as that phrase "master or member of a crew of any vessel" is used or intended to be used in the act? That he was a seaman seems to be clear. The Supreme Court has held that persons working on barges are seamen. See Ellis v. United States, 206 U. S. 246, 27 S. Ct. 600, 51 L. Ed. 1047, 11 Ann. Cas. 589. But we still have to determine whether, as a seaman working on the barges, he was of the class of persons intended to be included under the

words "master or member of a crew of any vessel?" The definition of "seaman" is contradictory of the finding that he was of a more superior position, and therefore I think it may be assumed that the facts are not sufficient to warrant a declaration that the deceased was a "master" of a vessel, as that term is used in the act; although it is true that he appears to have been the only person working at the time on these barges, and the only person in charge of them, and therefore his duties may well be said to have been somewhat—even though not exclusively—of the character of a barge master's duties.

But, however that may be, I find less difficulty in bringing him, by reason of his duties, within the definition of the phrase "crew of any vessel," as I believe that phrase is intended to be used in the Longshoremen's Act. The merchant marine act (46 U. S. Code, §§ 688–713 [46 USCA §§ 688–713]) thus defines a seaman: "Every person (apprentices excepted) who shall be employed or engaged to serve in any capacity on board the same [any vessel as previously defined] shall be deemed and taken to be a 'seaman'" (46 US CA § 713). The fact that a stevedore has been declared, under certain conditions, to be a seaman does not fully answer our question, because the rights of that kind of seaman, since the decisions of the Supreme Court determining when a stevedore is a seaman, International Stevedoring Company v. Haverty, 272 U. S. 50, 47 S. Ct. 19, 71 L. Ed. 157, Uravic v. Jarka Company, 282 U. S. 234, 51 S. Ct. 111, 75 L. Ed. 312, have simply been transferred to the Longshoremen's Act. As was said in the latter case (Page 239 of 282 U. S., 51 S. Ct. 111, 112): "While the section 33 [of the Merchant Marine Act, 46 USCA § 688] is construed to give the rights of seamen to stevedores it does not say or mean that stevedores are to be regarded as seamen on the particular vessel upon which for the moment they happen to be at work."

■ Bearing in mind that "within its sphere the statute [Longshoremen's Act] was designed to accomplish the same general purpose as the Workmen's Compensation Laws of the states," and as such is constitutional (Crowell v. Benson, 285 U. S. 22, 40, 52 S. Ct. 285, 288, 76 L. Ed. 598), we must now answer the question whether or not what the deceased did really brings him within the generally accepted term of a "member of a crew of any vessel," and I believe this question must be answered in the affirmative, because what he did seems to me to have partaken more of the duties of one charged with the general safety and control of these barges while afloat and in use, whether under way, or at anchor or at dock or pier, rather than of the duties of one charged merely with acting in the capacity of a watchman, or helper, or stevedore, whose work has no direct application to navigation, crude and unskilled as the duties of the deceased were. It was his duty to operate the pumps on the barges, to attend to the hatches, to make lines fast and unfast at docks or alongside of other vessels. He was the crew, the "ship's company," albeit he was its solitary member, and while he had other duties which did not admittedly partake of the character of those of a member of the crew of a vessel in any direct sense, nevertheless most, if not all, of these other duties were perhaps not very different from what the master or a member of the crew of the average small vessel might be called upon to do with respect to the cargo. In short, I am inclined to adopt a rather broad definition of the phrase "member of a crew of any vessel," as used in the act. Nor do I think that such construction does violence to the definition that has been given to the word "crew" by the weight of the decisions rendered before the passage of this act, and which we must assume was in the minds of those who drafted it, namely, all persons on board who, together with the master, constitute the ship's company. See U. S. v. Winn, Fed. Cas. No. 16,740; The Bound Brook (D. C.) 146 F. 160; Saylor v. Taylor (C. C. A.) 77 F. 476; The Buena Ventura (D. C.) 243 F. 797; Leary Const. Co. v. Matson (C. C. A.) 272 F. 461.

If it were not common for some person to be employed on barges of this sort in connection with their custody or control or management while in navigable waters, I think the argument would be considerably strengthened that the deceased in the present case was not the crew, and then he would fall more within the class of persons intended to be included in the operation of the act. See the very recent case of Seneca Washed Gravel Corporation v. McManigal (C. C. A.) 65 F.(2d) 779. There the court found that the person who had charge of the vessel was nothing but a night watchman; that he did nothing that assisted in any way in the navigation of the vessel; and that as a matter of fact the vessel was not actually in navigation at the time.

■ In conclusion, suffice it to say, I think in the present case it is clear from the duties performed by the deceased that he may properly be considered as falling within the term "crew" as that word is used in the Long-

shoremen's Act. That being true, I find that this court is without jurisdiction to allow an award under that act, and that the claimant is relegated to such rights, if any, which she may have under the merchant marine act (46 U. S. Code, §§ 688–713 [46 USCA §§ 688–713]).

I will sign an order in conformity with this opinion.