## BALTIMORE & OHIO R. CO. v. ZAHROBSKY.

### No. 3519.

Circuit Court of Appeals, Fourth Circuit.
Jan. 4, 1934.

George W. P. Whip, of Baltimore, Md. (Duncan K. Brent, of Baltimore, Md., on the brief), for appellant.

Henry Wortche and George Forbes, both of Baltimore, Md., (Max Sokol and Dickerson & Nice, all of Baltimore, Md., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

This appeal raises the question whether a stevedore, injured in the course of his employment on a ship through the failure of his employer to furnish safe appliances with which to work, prior to the passage of the Longshoremen's and Harbor Workers' Compensation Act of March 4, 1927, ch. 509, 44 Stat. 1424, 33 USCA § 901 et seq., had the election either to sue his employer under the general maritime law or to sue him under section 33 of the Merchant Marine Act of June 5, 1920, ch. 250, 41 Stat. 1007, 46 USCA § 688. The exclusiveness of the liability of the employer for such an injury under section 5 of the Longshoremen's and Harbor Workers' Compensation Act, 33 USCA § 905, had not then been established, and we are called upon to determine whether the stevedore's right to recover damages under the general maritime law for personal injuries caused by the negligence of his employer was taken away by section 33 of the Merchant Marine Act and the right of action therein provided substituted in its place.

On January 2, 1930, the stevedore in this case filed his libel in admiralty in the District Court against the Baltimore & Ohio Railroad Company, claiming that, while acting as an employee of the railroad company in the operation of an electric motor trimmer, he was seriously injured on January 4, 1927, on the French Barque Richelieu in an explosion of pitch dust caused by the failure of his employer, then engaged in loading the vessel with pitch, to furnish proper appliances for the purpose. The case was one of a series issuing out of the explosion on the Richelieu, for which the railroad company was held liable in Cornec v. Baltimore & Ohio R. R. Co. (C. C. A.) 48 F.(2d) 497. The respondent in due time filed its answer denying liability and nothing further was done in the case until after April 13, 1931, when the liability of the railroad company for damages caused by the explosion was finally established by the decision of this court on appeal in the principal suit. Subsequently, an interlocutory decree was entered in the case at bar wherein the railroad company was declared to be liable for the injuries sustained by the stevedore and the proceedings were referred to a commissioner to take testimony and assess the damages. After the libelant had taken his direct testimony, the railroad company filed a motion to set aside the interlocutory decree and dismiss the libel because it was not filed within two years after the cause of action arose. That period is prescribed by section 6 of the Employers' Liability Act, as amended, 45 USCA § 56, and sets a limit to the substantive right to bring suit under section 33 of the Merchant Marine Act, whereby all federal statutes modifying or extending the common-law right or remedy in cases of personal injury to railway employees are made applicable. Engel v. Davenport, 271 U. S. 33, 38, 46 S. Ct. 410, 70 L. Ed. 813; Atlantic Coast Line v. Burnette, 239 U. S.

199, 201, 36 S. Ct. 75, 60 L. Ed. 226. The motion of the respondent to dismiss the libel was denied, and the case proceeded to final decree in libelant's favor as one outside the scope of the statute. The sole question on this appeal is whether such a suit could be maintained.

[redacted] It is well established that prior to the enactment of section 33 of the Merchant Marine Act, a stevedore had the right to maintain an action against his employer for personal injuries caused by the latter's negligence; and if the injury took place upon navigable waters of the United States, the action was controlled by the general maritime law and might be brought either in admiralty or at law. In Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 34 S. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157, decided in 1914, it was held that admiralty had jurisdiction of a suit in personam by a stevedore against his employer, engaged in loading a ship, to recover for injuries sustained through the negligence of the employer in failing to furnish the stevedore with safe appliances and a safe place to work while laboring in the vessel's hold. The jurisdiction of admiralty was sustained because the wrong, which was the subject of the suit, was maritime in its nature and occurred on a ship upon navigable waters of the United States. This decision was confirmed in Robins Dry Dock & Repair Co. v. Dahl, 266 U. S. 449, 457, 45 S. Ct. 157, 69 L. Ed. 372, where it was said in a similar case that the rights and liabilities of the parties arose out of and depended upon the general maritime law which could not be enlarged or impaired by state statute.

The question is to what extent was this right of the stevedore affected by the enactment of section 33 of the Merchant Marine Act, 46 USCA § 688, which is as follows:

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located. (Mar. 4, 1915, c. 153, § 20, 38 Stat. 1185; June 5, 1920, c. 250, § 33, 41 Stat. 1007.)"

There is no express mention of the stevedore in this section, but it is settled that the word "seaman," in the sense in which it was there used, was broad enough to include one engaged on a ship in the activities of a stevedore. It was the policy of the law to extend the field in which the fellow servant doctrine was abolished, and it could not have been the intention of Congress to confer the protection of the law upon seamen and to deny it to stevedores engaged upon maritime work formerly done by the ship's crew. International Stevedoring Co. v. Haverty, 272 U. S. 50, 47 S. Ct. 19, 71 L. Ed. 157; Uravic v. Jarka Co., 282 U. S. 234, 51 S. Ct. 111, 75 L. Ed. 312.

It is the contention of the appellant that these cases go further and show that Congress intended by section 33 not only to extend the privileges of a seaman to a stevedore injured on a ship, but also to abolish the right of action in admiralty which the stevedore had previously enjoyed. Attention is directed to the statement in International Stevedoring Co. v. Haverty that section 33 changed the fellow servant rule in admiralty just as the employers' liability statutes did away with the rule in the case of personal injuries to railway employees. Likewise, in Uravic v. Jarka Company, 282 U. S. 234, at page 240, 51 S. Ct. 111, 75 L. Ed. 312, in answer to the suggestion that the case should be governed by the general maritime law, the court said that the fellow servant doctrine was of relatively recent appearance in admiralty, following the common law into which it had been introduced upon a principle of policy, and that it would be hard to maintain that principle as still the policy of the law after the doctrine had been abolished for railroad employees and seamen. Furthermore, in Lindgren v. United States, 281 U. S. 38, 47, 50 S. Ct. 207, 74 L. Ed. 686, it was announced that the Merchant Marine Act brought about a modification of the prior maritime law by a rule of general application in reference to the liability of the owners of vessels for injuries to seamen, and that this rule operated uniformly in all of the states, covering the entire field of liability for injuries to seamen, and superseding the operation of all state statutes dealing with that subject.

The decisions in Uravic v. Jarka Co. and Lindgren v. United States, however, throw

little light on the subject under discussion, because they were cases of wrongful death. Prior to the enactment of section 33 of the Merchant Marine Act (46 USCA § 688), there was no federal statute on this subject and no action for such a wrong would lie in the courts of the United States under the general maritime law. Such actions, however, were entertained in admiralty if the death occurred within the territorial waters of a state which had a survival statute. The Harrisburg, 119 U. S. 199, 7 S. Ct. 140, 30 L. Ed. 358; Western Fuel Co. v. Garcia, 257 U. S. 233, 42 S. Ct. 89, 66 L. Ed. 210. After Congress legislated on the subject in section 33, the courts of admiralty were henceforth governed by the modification of the maritime law which the statute contained, and the state enactments no longer controlled. We think also that when the decision in International Stevedoring Co. v. Haverty is read in the light of the facts involved, it will be seen that it does not hold that a stevedore has no right of action than that given him by section 33.

Some meaning must be attributed to the provision that the seaman or stevedore, as the case may be, may, "at his election," maintain an action for damages at law with the right to trial by jury. The decisions of the court have established the meaning of this phrase as applied to seamen in the usual sense of that term. Their rights, before and after the passage of the law, were summarized in Pacific S. S. Co. v. Peterson, 278 U. S. 130, 134, 49 S. Ct. 75, 76, 73 L. Ed. 220, as follows:

"By the general maritime law of the United States prior to the Merchant Marine Act, a vessel and her owner were liable, in case a seaman fell sick, or was wounded in the service of the ship, to the extent of his maintenance and cure, whether the injuries were received by negligence or accident, and to his wages, at least so long as the voyage was continued, and were liable to an indemnity for injuries received by a seaman in consequence of the unseaworthiness of the ship and her appliances; but a seaman was not allowed to recover an indemnity for injuries sustained through the negligence of the master or any member of the crew. The Osceola, 189 U. S. 158, 175, 23 S. Ct. 483, 47 L. Ed. 760; Chelentis v. Luckenbach S. S. Co., 247 U. S. 372, 380, 38 S. Ct. 501, 62 L. Ed. 1171; Carlisle Packing Co. v. Sandanger, 259 U. S. 255, 258, 42 S. Ct. 475, 66 L. Ed. 927.

"By section 33 of the Merchant Marine Act, as heretofore construed, the prior maritime law of the United States was modified by giving to seamen injured through negligence the rights given to railway employees by the Employers' Liability Act of 1908 and its amendments (45 USCA §§ 51–59) and permitting these new substantive rights to be asserted and enforced in actions in personam against the employers in federal or state courts administering common-law remedies, with the right of trial by jury, or in suits in admiralty in courts administering maritime remedies, without trial by jury. Panama R. R. Co. v. Johnson, 264 U. S. 375, 44 S. Ct. 391, 68 L. Ed. 748; Engel v. Davenport, 271 U. S. 33, 46 S. Ct. 410, 70 L. Ed. 813; Panama R. R. Co. v. Vasquez, 271 U. S. 557, 46 S. Ct. 596, 70 L. Ed. 1085; Baltimore S. S. Co. v. Phillips, 274 U. S. 316, 47 S. Ct. 600, 71 L. Ed. 1069."

The meaning of the election granted to seamen was made clear in Panama R. R. Co. v. Johnson, 264 U. S. 375, 388, 44 S. Ct. 391, 394, 68 L. Ed. 748, where it was said:

"Rightly understood, the statute neither withdraws injuries to seamen from the reach and operation of the maritime law, nor enables the seamen to do so. On the contrary, it brings into that law new rules drawn from another system and extends to injured seamen a right to invoke, at their election, either the relief accorded by the old rules or that provided by the new rules. The election is between alternatives accorded by the maritime law as modified, and not between that law and some nonmaritime system."

The scope of the election was further defined in Pacific Co. v. Peterson, supra, where it was held that the alternative measures of relief accorded the seaman, between which he is given an election, are the right, under the new rule, to recover damages for injury caused by negligence, and the right under the old rules to recover indemnity for injuries occasioned by unseaworthiness, and no election is required between damages under the new rule and the old contractual right to maintenance, cure, and wages, the latter being a cumulative right not inconsistent with the right to recover compensatory damages. See, also, Kuhlman v. W. & A. Fletcher Co. (C. C. A.) 20 F.(2d) 465; Hammond Lumber Co. v. Sandin (C. C. A.) 17 F.(2d) 760.

In the light of these decisions with reference to the alternatives allowed to seamen under section 33, we see no escape from the conclusion that the section was likewise intended to preserve the stevedore's existing right, and to create an additional right, if he should see fit to use it. The language used

in International Stevedoring Co. v. Haverty, supra, must be construed with reference to the situation there existing, namely, that a suit had been instituted at law for negligence, as authorized by section 33 of the act, in which the plaintiff claimed the benefits of the act when the defendant invoked the common-law doctrine as to fellow servant. The only question decided was that the plaintiff, as a stevedore injured on a ship, was entitled to the protection of the act whereby in such a case the fellow servant doctrine was abolished. Unless the conclusion is reached that the stevedore's right of action was not abolished by the statute, no election was afforded him within its terms, and, contrary to its plain meaning, the only alternative to the right thereby given would be destroyed.

In the pending case, the suit was brought in admiralty precisely as such suits were brought prior to the enactment of section 33 of the Act. It could then be brought only under the general maritime law, because the two-year period contemplated by the statute had expired; and it must be assumed that the libelant was exercising the right which he still retained.

Affirmed.