## THE PAULA.

### No. 389.

Circuit Court of Appeals, Second Circuit.
July 19, 1937.

Silas B. Axtell, of New York City, for appellant.

Haight, Griffin, Deming & Gardner, of New York City (E. R. Kraetzer, of New York City, of counsel) for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal from a final decree declining jurisdiction and dismissing the libel on the ground that both parties to the suit are aliens. The libelant was a German citizen employed as an ordinary seaman on the S. S. Paula, a vessel of Danish registry and ownership, which plies between ports of the United States and ports of South America. He signed shipping articles in a Chilean port for a voyage to Brooklyn, N. Y. While the vessel was at the intermediate port of Jacksonville, Fla., on August 4, 1936, the libelant was injured during the performance of his duties by a blow from a heavy hatch beam. He was taken ashore to a hospital and received maintenance and cure at the expense of the owner of the vessel up to October 10, 1936. Thereafter, he came to New York and on October 19, 1936, commenced the present suit, which is a libel in rem against the vessel and in personam against J. Lauritzen, a Danish corporation, brought in by foreign attachment of the vessel. The libel alleges that the libelant's injuries were caused by unseaworthiness of the vessel and negligence of its officers and crew, and in a second count claims maintenance and cure. The owner appeared as claimant and gave security. Thereafter the libelant moved for a default decree, and the owner made a counter motion that the court decline jurisdiction.

From affidavits submitted in support of the counter motion, it appears that Danish law provides that a seaman's medical expenses, if the seaman is not a Danish citizen, must be defrayed by the shipowner for a period of six weeks, and further provides for the payment of workmen's compensation if the seaman is disabled for a period of more than thirteen weeks from the time of the accident; that under these provisions an injured seaman has a full and complete right to compensation from the insurance fund, a governmental agency, and is not required to return to Denmark to procure payment of such compensation but may apply to any Danish consul or vice consul. Mr. Bech, the Danish consul general at New York, states that he is willing to entertain any claim under the Danish law which the libelant may present, and he joins in requesting the court to decline jurisdiction over the libel. From the libelant's counter affidavits it appears that he has not applied for compensation under the Danish law because he thinks he can obtain a larger sum by this suit; that since coming to New York he has incurred indebtedness of about $400 to American creditors, whom he desires to have paid out of any recovery he may obtain before retaining anything for himself; and that since filing his libel he has learned that he need not return to Germany in order to be admitted to the United States under the German quota, and it is his intention to be so admitted and to apply for American citizenship. He also states that "my witnesses, four of them," by which we understand him to mean all but one of the eyewitnesses to the accident, live in New York City. Upon the facts disclosed in the libel and the supporting and opposing affidavits, Judge Moscowitz exercised his discretion to decline jurisdiction.

That a suit in admiralty between aliens may be entertained or dismissed in the exercise of a sound judicial discretion is clear beyond dispute. Canada Malting Co. v. Paterson Steamships, 285 U.S. 413 52 S.Ct. 413, 76 L.Ed. 837. The only question is whether discretion was abused in the particular case. The Falco, 20 F.(2d) 362 (C.C.A.2).

Before passing to a consideration of that question, it will be convenient to dispose of a contention of the appellee with respect to the effect of certain treaty provisions. The Treaty of 1826 between the United States and Denmark (8 Stat. 340), although abrogated on April 15, 1856, was revived, except as to Article 5, by the convention of April 11, 1857 (11 Stat. 720, art. 5). Article 8 of the Treaty of 1826 declares that the consuls and vice consuls shall enjoy "all the rights, privileges, and immunities, of the Consuls and Vice Consuls of the most favoured nation." 8 Stat. 342. This makes effective, according to the appellee's argument, article 22 of the Treaty between Norway and the United States, proclaimed September 15, 1932 (47 Stat. 2152), which reads as follows:

"A consular officer shall have exclusive jurisdiction over controversies arising out

of the internal order of private vessels of his country, and shall alone exercise jurisdiction in cases, wherever arising, between officers and crews, pertaining to the enforcement of discipline on board, provided the vessel and the persons charged with wrongdoing shall have entered a port within his consular district. Such an officer shall also have jurisdiction over issues concerning the adjustment of wages and the execution of contracts relating thereto provided, however, that such jurisdiction shall not exclude the jurisdiction conferred on local authorities under existing or future laws."

■■ Assuming without decision that this article is effective between Denmark and the United States, we are unable to accept the contention that it requires affirmance of the decree appealed from. The exclusive jurisdiction of the consul is limited to "controversies arising out of the internal order of private vessels" and to cases "pertaining to the enforcement of discipline on board." The plaintiff's alleged rights of action are not covered by such phrases. See Gerradin v. United Fruit Co., 60 F.(2d) 927, 929 (C.C.A. 2). The only portion of the article which could possibly be thought applicable to the claims asserted in the libel is the final sentence relating to "issues concerning the adjustment of wages and the execution of contracts relating thereto." As to such matters the jurisdiction conferred on local authorities under existing or future laws is concurrent with that of the consular officers. Hence there is nothing in the treaty which deprives the court of jurisdiction over the suit.

[4] The appellant argues that the District Court erred in declining jurisdiction because (1) his cause of action arose in an American port; (2) his witnesses are here; (3) he hopes to obtain a larger recovery by suit than the Danish compensation law provides; and (4) he has incurred debts for hospitalization, living expenses, and attorney's fees since coming to New York. No one, nor all, of these circumstances would justify us in finding that the court abused its discretion. It is not disputed that the Danish law gives the libelant a right to medical expenses for a limited period (which the respondent has already satisfied) and a right to compensation for injuries from a governmental insurance fund, out of which payment may be obtained in the United States by presentation of a claim to the Danish consul. These rights are substitutes for maintenance and cure and the right to indemnity recognized by the general maritime law, and the substituted remedy is available in New York where the alien and his witnesses are present; hence no injustice results from leaving him to that remedy. It is true the accident occurred in an American port; but, as the Supreme Court stated in Canada Malting Co. v. Paterson Steamships, 285 U.S. 413, 422, 52 S.Ct. 413, 415, 76 L.Ed. 837, the bare circumstance of where the cause of action arose has not been treated as determinative of the power of the court to exercise discretion whether to take jurisdiction.

■ The libelant claims not only under the maritime law but also under section 33 of the Jones Act (46 U.S.C.A. § 688). He asks us to rule that this applies to an alien seaman on a foreign ship who signed on at a foreign port, if he sustains injury in a port of the United States through the negligence of a fellow seaman. This question was expressly left open in Plamals v. Pinar Del Rio, 277 U.S. 151, 155, 48 S.Ct. 457, 72 L.Ed. 827. Precise authority on it is meager. Such as there is has answered the question in the negative. The Seirstad, 27 F.(2d) 982 (D.C. E.D. N.Y.); The Magdapur, 3 F.Supp. 971 (D.C.S.D.N.Y.). But an American stevedore injured in a foreign ship at an American port may claim the benefit of the Jones Act. Uravic v. Jarka Co., 282 U.S. 234, 51 S.Ct. 111, 75 L.Ed. 312. So also may an American seaman, Shorter v. Bermuda & West Indies Co., 57 F.(2d) 313 (D.C. S.D. N.Y.); and in Arthur v. Compagnie Generale Transatlantique, 72 F.(2d) 662 (C.C.A. 5), the act was held applicable to a stevedore of unproven citizenship injured on a foreign ship in the Canal Zone. At page 664, there is a dictum that "the right of action is given to all seamen regardless of nationality." Likewise the act applies to an American owned vessel, though under foreign registry. Gerradin v. United Fruit Co., 60 F. (2d) 927 (C.C.A.2). See, also, Torgersen v. Hutton, 243 App.Div. 31, 276 N.Y.S. 348, affirmed 267 N.Y. 535, 196 N.E. 566, certiorari denied 296 U.S. 602, 56 S.Ct. 118, 80 L.Ed. 426, where an alien seaman who was employed in this country to work on a yacht controlled and half-owned by the American defendant was granted recovery, although the other half-owner was a foreign corporation. Whether an American seaman on a foreign ship, who had signed on at a foreign port, could claim

under the Jones Act, is not entirely clear. In the Uravic opinion, Justice Holmes remarked (282 U.S. 234, at page 241, 51 S. Ct. 111, 113, 75 L.Ed. 312): "If it should appear that by valid contract or special circumstances seamen on a foreign ship should not be protected by the statute it will be time enough to consider the exception when it is presented." It is even less clear that a foreign seaman who had signed on at a foreign port should have the benefit of the Act. We think the intention to legislate for alien seamen who have signed articles abroad on a foreign ship ought to be clearly expressed before the courts extend the statute to them.

Decree affirmed.