Clyde Edgar FARMER, Plaintiff,

v.

STANDARD DREDGING CORPORA-TION, a Delaware corporation, Defendant.

Civ. A. No. 1862.

United States District Court
D. Delaware.

Nov. 10, 1958.

Vincent A. Theisen and Joseph T. Walsh (of Logan, Marvel, Boggs & Theisen), Wilmington, Del., for plaintiff.

William H. Bennethum, Wilmington, Del., for defendant.

STEEL, District Judge.

The action is before the Court upon a motion by plaintiff to strike the third

and sixth affirmative defenses as insufficient in law.

Plaintiff, a United States citizen, has sued defendant, a Delaware corporation, for injuries alleged to have been sustained in the course of his employment as a seaman by defendant aboard defendant's dredge Jamaica Bay registered under the laws of the United States. The injury is alleged to have been occasioned by defendant's negligence while the Jamaica Bay was operating in the territorial waters of Venezuela.

Broadly stated, the defenses assert that the contract between the parties (third defense) and the operation of Venezuelan law (sixth defense) bar the action. While several grounds of jurisdiction are alleged in the complaint, plaintiff has stipulated that he will rely exclusively upon the Jones Act, 46 U.S.C.A. § 688, as a jurisdictional basis for the action. The Court, therefore, has not considered the applicability of these defenses to other theories of relief but has dealt with them solely in their relationship to the Jones Act.

### Third Affirmative Defense

 The answer alleges that the parties entered into a contract in Venezuela by which plaintiff agreed to serve as first mate aboard the Jamaica Bay for the duration of a dredging operation in Maracaibo Bay, territorial waters of Venezuela. It further alleges the existence of certain indemnity provisions of the Venezuelan law which defendant claims is applicable to the injury which plaintiff sustained, and then concludes:

"Payments under the provisions of such law have been tendered to and accepted by the plaintiff herein and said payments and acceptance constitute the sole sum due said plaintiff under the terms and conditions of the foreign contract herein referred to."

The purport of this language is not clear. It may mean that the employment contract between the parties provides in terms that if the maximum indemnity prescribed by Venezuelan law should be paid by defendant to plaintiff (and it has been), all other claims under the employment contract which plaintiff otherwise might have against defendant are barred. The simple answer to this is that plaintiff is not seeking to recover under the terms of the employment contract. While his action is predicated upon the employment relationship, his claim is not based upon anything which defendant has promised plaintiff in the contract of employment.

Another possible interpretation of the answer is that it alleges that the parties have agreed in their employment contract that their rights and liabilities in their employment relationship shall be governed by Venezuelan law. The agreement provides:

"Article VI. If the Employee renders satisfactory service for a period of twelve months, or for a shorter period in the event his employment is terminated by the Company pursuant to the provisions of the first paragraph of Article V, the Company shall pay to the Employee:

"(1) 'Utilidades' (Venezuelan Profit Sharing), 'Preaviso' (Payment in Lieu of Notice of Dismissal), 'Indemnazacion por Cesantia' (Termination Pay), 'Indemnazacion por Antiguedad' (Indemnity for Length of Service), and any other benefits under Venezuelan Law, if any of the above are applicable to the Employee's service or dismissal."

The provision that defendant shall pay to plaintiff "any other benefits under Venezuelan law" is not tantamount to an undertaking by plaintiff to accept such "other benefits" in lieu of all other rights *dehors* the Venezuelan law which he otherwise might be entitled to assert. Moreover, if by the contract plaintiff had agreed to accept payments under the Venezuelan law in lieu of all rights accorded to him under the law of the flag of the Jamaica Bay, the agreement probably would be invalid as against pub-

lic policy. Lauritzen v. Larsen, 1953, 345 U.S. 571, 589, 73 S.Ct. 921, 97 L.Ed. 1254.

### Sixth Affirmative Defense

At pretrial plaintiff conceded (solely for purposes of testing by motion the sufficiency of the defense) the following construction of the Venezuelan law: Venezuela imposes an absolute but limited liability upon a ship operator for an injury incurred by a seaman in the course of his employment, and provides that the remedy granted by its laws shall be exclusive for any injury incurred within the territorial waters of Venezuela without regard to the nationality of vessel or seaman.

Since plaintiff has been paid by defendant the full indemnity for the kind of injury which he sustained, defendant asserts that by the terms of Venezuelan law relief under the Jones Act is foreclosed.

Plaintiff argues that Venezuelan law is not controlling but that the law of the flag—i. e., United States law—must govern the rights of the parties. Lauritzen v. Larsen, supra, and cases decided under it are the basis of this argument. Lauritzen, emphasizing the law of the flag, held that the Jones Act afforded no remedy to an alien seaman injured in a foreign port on board a vessel of foreign registry owned by an alien. But Lauritzen is distinguishable from the case at bar in two important respects: In Lauritzen, the law of the country where the injury occurred did not provide, as does Venezuelan law, that its law should be looked to exclusively to determine the rights of a seaman injured in its waters regardless of the nationality of the seaman or the flag of the vessel; nor did the tort in Lauritzen occur on a vessel which was engaged in essentially local work as is true in the case at bar.

Were there no pertinent Venezuelan law, unquestionably an action under the Jones Act would lie. See Gilmore & Black, Admiralty, p. 388 (1957); Restatement of Conflicts of Law, § 405; Cain v. Alpha S.S. Corp., 2 Cir., 1929, 35 F.2d 717, affirmed 1930, 281 U.S. 642, 50 S.Ct. 443, 74 L.Ed. 1086. Furthermore, since plaintiff was employed to serve on an American ship, the Jones Act would be applicable regardless of any provision of Venezuelan law if the vessel traversed the seas and called at ports of different nations during the plaintiff's employment. Cain v. Alpha S.S. Corp., supra; Wenzler v. Robin Line S.S. Co., D.C.W.D.Wash.1921, 277 F. 812; Petition of Clyde S.S. Co., D.C.S.D.N.Y.1926, 16 F.2d 930. Plaintiff's employment on the Jamaica Bay was, however, localized in the territorial waters of Venezuela.

What effect, then, is this Court to accord to Venezuelan law which provides that its indemnification provisions shall afford a seaman employed solely within Venezuelan waters a remedy which is exclusive of all others?

No case has been found covering the precise point. The cases which have applied the Jones Act have, however, indicated an almost universal solicitude for the rights of a United States seaman; and only two have been found which deny to a United States seaman the right to seek Jones Act recovery. Each of these cases was decided on the basis of law of the flag[1]. Moreover, recent and more authoritative cases indicate that if any other factor can be combined with the United States citizenship or domicile of the seaman which will serve as a basis for applying the law of the United States, the law of the flag will be discarded if its application would defeat an action under the Jones Act[2]. By contrast, no case has been found which holds that the

---

1. Clark v. Montezuma Transportation Co., 1926, 217 App.Div. 172, 216 N.Y.S. 295; Hogan v. Hamburg-American Lines, 1934, 152 Misc. 405, 272 N.Y.S. 690, certiorari denied 1935, 295 U.S. 749, 55 S.Ct. 827, 79 L.Ed. 1693. See also The Oriskany, D.C.Md.1933, 3 F.Supp. 805.

2. Uravic v. F. Jarka Co., 1931, 282 U.S. 234, 51 S.Ct. 111, 75 L.Ed. 312 (accident occurred in United States); Gerradin v. United Fruit Co., 2 Cir., 1932, 60 F.2d 927 (ship owners were American); Gambera v. Bergoty, 2 Cir., 1942, 132 F.2d 414 (accident occurred while

Jones Act is not available to a seaman injured on a vessel of United States registry.

 It can, of course, be argued that under the principles of comity declared in Hilton v. Guyot, 1895, 159 U.S. 113, 163–164, 16 S.Ct. 139, 40 L.Ed. 95, the Courts in the United States should honor Venezuelan law and deny Jones Act relief. This view is not acceptable. Here the connection between the injury and the parties involved is at least as closely identified with the United States as with Venezuela. As against the circumstances that the injury occurred during an employment exclusively within foreign territorial waters, the United States citizenship of the parties and the United States registry of the vessel are considerations of paramount importance which require that Jones Act relief be recognized when a maritime tort has occurred.

Lauritzen, supra, recognizes that "each nation has a legitimate interest that its nationals and permanent inhabitants be not maimed or disabled from self-support," (345 U.S. at page 586, 73 S.Ct. at page 930). The laws of Venezuela, while presumably adequate for Venezuelan residents, cannot be held as a matter of law to satisfy the standards of American remedies in the case of maritime torts. The interests of Venezuela in the matter ended when plaintiff departed from its boundaries; but the interest of the United States is continuing. The power of Congress and the Courts to control the activities of United States citizens who are abroad when those activities have effects within the United States and are of little or no consequence outside, is settled. See Steele v. Bulova Watch Co., 1952, 344 U.S. 280, 285–286, 73 S.Ct. 252, 97 L.Ed. 252. Under the prevailing circumstances, the Court will not apply Venezuelan law to deprive plaintiff of a remedy under the Jones Act.

The motion to strike the third and sixth affirmative defenses is granted.

Counsel for plaintiff is requested to submit an order in conformity with this opinion.

---

ship was transiting coastwise between American ports); Shorter v. Bermuda & West Indies S.S. Co., D.C.S.D.N.Y.1932, 57 F.2d 313 (accident occurred in United States); Zielinski v. Empresa Hondurena de Vapores, D.C.S.D.N.Y.1953, 113 F. Supp. 93 (Honduran corporate ship owner was in fact controlled by American corporation); see also Gilmore & Black, supra, § 6–64 and footnotes thereto.